November 23, 1908.

————o————

No. 4487.

(Court of Appeal, Parish of Orleans.)

## THOMAS G. MORAN VS. JOSEPH DONNELLY ET AL.

When in a suit attacking the genuineness of the signature of the maker of a note it is shown that such person had no uniform way or method of signing, sometimes writing out in full his christian name,

and at other times writing only his initials. and reputable witnesses beside, testify that they have often seen the party sign his name and believe the contested signature to be his, and the comparison of the contested signature with the admitted ones, satisfying the Court of the genuineness of said contested signature, judgment must be given accordingly.

Appeal from Civil District Court, Division "D."

McCloskey & Benedict, for Plaintiff and Appellee.

Clegg & Quintero, Woodville & Woodville, for Defendant and Appellant.

ESTOPINAL, J. The plaintiff sues on two promissory notes alleged to have been drawn by the late Michael Griffin, to the order of T. J. Moran, (plaintiff), one for $700.00, dated New Orleans, January 11th, 1904, and the other for $900.00, dated New Orleans, February 23rd, 1905, each payable one year after date, and stipulating to bear interest at the rate of six per cent per annum from date until paid.

The testamentary executors of the late Michael Griffin, James Donnelly and Mrs. Maggie O'Brien, wife of John Walsh, are made parties defendant, and judgment is prayed against them *in solido*. The defense is forgery, and, in the alternative, want of consideration.

The Judge of the District Court, always careful and painstaking, saw and heard the witnesses testify in this case, and gave judgment for plaintiff.

We have read carefully the testimony given by the experts and others who had often seen Mr. Griffin sign his name or often seen his signature, and we have compared the signature on the notes, which are the subject of this litigation, with documents upon which appear the admitted signature of Mr. Griffin. This study of the record satisfies us that the conclusions of our brother of the lower Court are correct.

Had the signature of Mr. Griffin been uniform, expert testimony would then have ben valuable in reaching a determination, but whereas in the case at bar the person whose signature is questioned wrote his name differently, for instance, "M. Griffin" sometimes, at other times "Michael Griffin," and again in some other times made flourishes under the name, and at other times omitted them, then we are of opinion that expert

testimony is of little value; and this is particularly so when there is other evidence found in the record to bear out the plaintiff in his demand.

Conceding that by reason of the scantiness of the evidence there be some question as to the genuineness of the loan and note first made, that of January 11th, 1908, all such doubt is dispelled by the proof offered on the subject matter of the second note, that of February ,1905.

In reference to this latter transaction, Mr. Moran says that Mr. Griffin called at his office by appointment on February 23rd, 1905, and that in the presence of Mr. Harry Patton, Mr. Griffin signed a note, and he, Moran, then handed him $900.00. Moran further says, that not having all of the nine hundred dollars ($900.00) about his person or in his house, he drew his check on the Whitney National Bank for $500.00, in order to make up the $900.00. Moran tells of a discussion between himself and Mr. Griffin, touching the correctness of the count, the latter saying that there was only $800.00 in the money handed him, while Moran contended that there was $900.00, and how the recount established the fact that there was really $900.00.

Mr. Harry Pattin appears to have been a witness of the transaction by pure chance or accident. He was in Mr. Moran's office when Mr. Griffin called, and seeing them about to engage in a private business transaction, he tried to bow himself out of the office, but Mr. Griffin insisted he could and should remain. Mr. Pattin corroborates Moran absolutely. He saw the money paid and heard the discussion in reference to the correctness, and tells of the recount of the money. He saw Mr. Griffin sign a paper contemporaneously with the passing of the money, but didn't read the document. The testimony of this witness is straightforward and does not appear to have been discredited in the minutest particular. A check of date February 23rd, 1905, for five hundred dollars ($500.00) on the Whitney acknowledgment of this, received from Mothe, his (Mothe's) National Bank, drawn by Moran to the order of "cash," is in the record.

There was evidence elicited in an endeavor to show that Moran was a poor man, too poor to lend money. We do not deem it necessary to discuss this phase of the defense as, in our opinion, it has no merit. So with the evidence in reference to the financial standing of Mr. Griffin, where it is sought to

—44—

raise a presumption against his borrowing, he being a rich man. We do not attach any significance to this circumstance, believing that the record contains enough to show that the transactions with Moran were characteristic of the eccentric old gentleman, Mr. Griffin.

A number of reputable witnesses, some of them close and intimate office associates of Mr. Griffin, testify that they believe the signatures on the contested notes are the signatures of Mr. Griffin; that they had seen him write his name frequently or had often seen his signature.

For the defense, we find the testimony of a bank teller (paying), who seldom saw Mr. Griffin's signature, because Griffin very infrequently drew checks. His testimony is overwhelmed by that of persons who saw him sign and saw his signature very often. He rarely saw it.

Barring Col. F. C. Zacharie, the other witnesses are parties to this suit, who testify to certain statements made by the late Mr. Griffin. This is the weakest kind of evidence, and if not to be entirely disregarded, can certainly have little weight in the consideration of this case.

Col. Zacharie testified as handwriting expert, as we have before said, expert testimony is of little value in view of the fact that Mr. Griffin had no fixed way of signing his name or of forming the letters of his name.

Besides the detailed statement made on the matter of the particular formation of the letters of the name in the contested notes, and the difference these bore in the letters in the admitted genuine signature of Mr. Griffin, Col. Zacharie stated as one of the reasons for believing the signaure on the contested notes to be non-genuine was, that these were signed "M. Griffin," whereas all the signatures of Mr. Griffin which he had seen affixed to the Notarial Acts and checks, were signed "Michael Griffin."

It must be admitted that if this circumstance were not attacked and destroyed by strong evidence, it must have weight and indeed carry conviction. The force of this evidence was destroyed, however, and this was admitted by Col. Zacharie himself, whose own words we use.

We quote from the testimony of Col. Zacharie:

Q. "As I understand it, you have given to us the reason

which actuates you in saying that these notes are sued upon here, were signed by some other than Mr. Griffin?''

'A. ''Yes, sir.''

Q. ''One of these reasons was that Michael Griffin always signed his name 'Michael Griffin,' and not 'M. Griffin'? Now I exhibit to you a document marked 'D-1' which has heretofore been offered in evidence in this case, signed 'M. Griffin,' and acknowledged to bear M. Griffin's genuine signature. Has that any effect upon the opinion you have given in your direct examination?''

(Counsel hands document in question to the witness.)

A. ''I would say that this is an exceptional instance—I have never seen this before.''

Q. ''Well, it would to some extent qualify the opinion you have previously given?''

A. ''Yes, sir.''

So we think, with the expert witness, that the irregular style or manner of signing by a person, makes it difficult to establish with sufficient certainty that which is and that which isn't, that person's signature or writing.

Our attention is directed by counsel for the defense to the condition of Moran's letter book, urging that the condition of this book shows that it has been tampered with, and evidence of a certain letter bearing on a business matter between Moran and Griffin destroyed; it is true that a page has been torn out of the book, but it does not appear to have been a letter written by Moran to Griffin, as contended for by counsel, for that letter, of date January 11th, 1904, is found copied on page 505.

We have not deemed it necessary to enter into a lengthy detail of the testimony. Suffice it to say that the evidence, in addition to a careful examination of the exhibite and a comparison by us of the signature on these, with those on the contested notes, absolutely convince us that the notes are genuine.

The judgment must be affirmed.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be, and it is hereby affirmed.